FLORA WEIDEMEYER v. MARCUS REITCH.

Decided February 8, 1908.

**Street—Dedication—Evidence.**

In a suit to enjoin the owner from closing an alleged street or alley in a city, evidence considered, and held insufficient to show a dedication of the strip of land in controversy as a street, and also insufficient to support a plea of estoppel.

Appeal from the District Court of Anderson County. Tried below before Hon. John J. Word, Special Judge.

*P. N. Springer,* for appellant.—In order to create an estoppel it is absolutely essential not only that the acts and representations alleged were reasonably calculated to deceive and mislead the party claiming the estoppel, but that they did actually deceive and mislead

him and cause him to change his position for the worse; and if there is no injury there is no estoppel. Lewis v. Brown, 39 Texas Civ. App., 139; Wortham v. Thompson, 81 Texas, 350; Masterson v. Little, 75 Texas, 698; Burleson v. Burleson, 28 Texas, 383; Scoby v. Sweatt, 28 Texas, 715; Page v. Arnim, 29 Texas, 55.

*Campbell & Sewell,* for appellee.—The pleadings and the uncontradicted evidence entitled plaintiff to the relief sought and granted by the court in its judgment. Walker v. Cole, 89 Texas, 327; Moore v. Brown, 27 Texas Civ. App., 208; Tripis v. Weslow, 18 S. W. Rep., 684; Saunders v. Ireland, 27 S. W. Rep., 880; Minor v. Lumpkin, 29 S. W. Rep., 799; Missouri, K. & T. Ry. Co. v. Batsell, 34 S. W. Rep., 1047; Galveston Wharf Co. v. G., C. & S. F. Ry. Co., 81 Texas, 495; Andrews v. Key, 77 Texas, 35; Evans-Snider-Buell Co. v. First National Bank, 39 S. W. Rep., 213.

Where the owner of land exhibits and records a map on which an alley is defined, and lots are sold in accordance with said plat or map, such acts operate as an immediate dedication of such alley, and the owner of the fee thereto loses all rights therein, except an interest in common with the balance of the public. City of Corsicana v. Zorn, 97 Texas, 317; Oswald v. Grenet, 22 Texas, 94; Preston v. City of Navasota, 34 Texas, 687; Lamar County v. Clements, 49 Texas, 357; Wolf v. Brass, 72 Texas, 133; Sanborn v. City of Amarillo, 93 S. W. Rep., 473; Orrick v. City of Ft. Worth, 32 S. W. Rep., 443; Timon v. Whitehead, 58 Texas, 295; Kalteyer v. Sullivan, 18 Texas Civ. App., 488; City of San Antonio v. Sullivan, 23 Texas Civ. App., 619; City of Tyler v. Boyette, 96 S. W. Rep., 935; Gilder v. City of Brenham, 67 Texas, 349.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee to enjoin and restrain appellant from, closing up or obstructing an opening or passageway between appellee's residence property and adjoining property owned by appellant in the city of Palestine. The cause was tried in the court below without a jury and resulted in a judgment in favor of plaintiff granting the relief prayed for in the petition. There is no statement of facts in the record and we deduce the following conclusions of fact from the findings of fact filed by the trial court:

Appellant is the surviving wife of F. A. Weidemeyer, deceased, and as such survivor is in possession and control of the property belonging to the community estate of herself and said husband.

On the 12th day of August, 1879, J. G. Goldwaith and wife conveyed to F. A. Weidemeyer, who was then the husband of appellant, a tract of 2½ acres of land on the Jacob Snively survey in the city of Palestine. The field notes in this deed describe the land by giving its outer boundaries and show that it was then in a solid body and had not been subdivided into lots or blocks. On March 9, 1880, Weidemeyer and wife conveyed a portion of this land to W. W. McClanahan, describing the portion so conveyed as follows: "That tract or parcel of land lying and being situate in the city of Palestine and described as follows, viz.: Lot 3 in the Willis block, said

lot fronting 50 feet on John Street and running back, south line 150 feet, and north line 164 feet, more or less. East line 50 feet with east boundary line of the Willis block." At the time this conveyance was made the two and a half acre tract had not been subdivided and no map or plat thereof had been made. Soon after McClanahan purchased he built a home on his property and inclosed it by a fence which he built on the line of his lot as described in his deed. In July or August, 1880, after McClanahan had improved his property and established his home thereon, Weidemeyer built a house on that portion of the two and a half acre tract south of and adjoining the lot sold to McClanahan and lived there with his family until some time in 1890. At the time McClanahan purchased, the whole of the south end of the two and a half acre tract, including his property and that afterwards occupied by Weidemeyer as a homestead, was embraced in one enclosure. When Weidemeyer built his home he left an opening ten feet wide along the north side of his lot and adjoining McClanahan's property. This open space extended the entire length of the lots, but was closed at the back end and was left by Weidemeyer for his convenience in getting into the rear of his premises. When this open space was left by Weidemeyer he told McClanahan that if he would make a bow in his south fence at the rear end of the opening he, Weidemeyer, would make a like bow in his north fence, and in this way the passageway would be more useful to both of them, as wagons could then drive in and turn around without having to go into either his or McClanahan's back yard, and that if he, McClanahan, would do this he, Weidemeyer, would not close up the opening as long as they both lived there as neighbors. In March, 1881, F. A. Weidemeyer caused a map to be made of the two and a half acre tract, showing its subdivision into lots and blocks. This map, which was recorded in the deed records of Anderson County, shows the McClanahan and Weidemeyer property with the open space between them. That portion of the property north of the McClanahan property was subdivided into some ten or twelve lots and has a street and an alley running through it upon which the several lots abut. After the record of this map a number of these lots were sold by Weidemeyer and wife by their map number and in the deeds conveying some of said lots the map is referred to for description. None of these lots, however, are contiguous to the open space in controversy and that space is not designated on the map as an alley and is not referred to in any of the deeds. McClanahan and wife sold their property to Mrs. L. A. Huff in 1898, and Mrs. Huff sold to Mrs. H. A. Spain in 1899. In 1903 Mrs. Spain sold to appellee. In each of these deeds the property is described as lot 3 in the Weidemeyer Addition to Palestine, and the deed from Weidemeyer to McClanahan is also referred to for further description.

The Weidemeyers moved from their place adjoining McClanahan's some years ago and it has since been occupied by tenants. After Mrs. Huff bought the McClanahan property, which was subsequent to the removal of the Weidemeyers, she reconstructed her fence along the south line of her property. As thus reconstructed the fence was

straight, the curve at the back end of the open space, which Mc-Clanahan had maintained under his agreement with Weidemeyer, being eliminated. With this exception the open space between the two places remained just as it had been since Weidemeyer left it there when he improved his property, until some time in 1905. In that year the fence built by Weidemeyer on the south line of this opening became so out of repair as to be worthless and to avoid the necessity of building a new fence appellant placed double gates across the east end of the opening. These gates are not kept locked and appellee has been allowed to continue to use the passageway whenever he wished.

It is not shown that appellee had any knowledge of the original agreement between Weidemeyer and McClanahan in regard to their joint use of this open space, nor is there any finding by the trial court that appellee saw the property on the map before his purchase.

The city of Palestine was an incorporated town at the time Weidemeyer recorded the map before mentioned and has been incorporated ever since that time.

We do not think these facts sustain the judgment of the court below. There was no intention on the part of Weidemeyer to dedicate the strip of land in question to public use, and the mere fact that it was shown on the map recorded by him would not have the effect of such dedication. It is not designated on said map as an alley, and as shown thereon it is closed at the back end and there is nothing appearing upon the face of the map indicating that such space was dedicated to public use. No other person owning lots in the Weidemeyer Addition could have any possible interest in keeping said space open other than McClanahan or those who purchased his property. It is clear that as between McClanahan and appellant the former only had a permissive use of the property so long as Weidemeyer and he lived there as neighbors, and his vendees have acquired no higher right therein. We do not think the facts raise the issue of estoppel. Such being our conclusion from the undisputed facts, it follows that the judgment of the court below should be reversed and judgment here rendered for appellant, and it has been so ordered.

*Reversed and rendered.*

Writ of error refused.